UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

STEPHEN WAGNER,             Case No. 19-cv-940 (MJD/ECW)

      Plaintiff,

v.             **REPORT AND RECOMMENDATION**

FRANCHOICE, INC. and
CAREYANN GOLLIVER,

      Defendants.

---

This matter is before the Court on Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6). (Dkt. 14.) This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this action on April 4, 2019. (Dkt. 1.) The Summons and Complaint were served on Defendant FranChoice, Inc. ("FCI") on April 9, 2019 and on Careyann Golliver ("Golliver") on April 10, 2019. Defendants subsequently moved to dismiss the Complaint. (Dkt. 8.) That motion was withdrawn after Plaintiff filed an Amended Complaint. (Dkt. 19.)

The operative Amended Complaint alleges as follows: Stephen Wagner is an individual citizen of Wisconsin, and resides in Menomonee Falls, Wisconsin. (Dkt. 13 ¶ 3.) Wagner became interested in purchasing a franchise in late 2015. (*Id.* ¶ 9.) To this

end, he communicated with Defendants FCI and Golliver. (*Id.* ¶¶ 9-10.) FCI is a corporation formed under the laws of Minnesota, with its principal place of business in Eden Prairie, Minnesota. (*Id.* ¶ 4.) It is a franchise broker that assists prospective franchisees in identifying, investigating, selecting and acquiring franchises. (*Id.*) Golliver, an FCI representative, is an individual residing in Parker, Colorado and is a citizen of that state. (*Id.* ¶ 5.)

Golliver initially presented Wagner with three franchise opportunities, but he eliminated them as possible investments through his own investigation. (*Id.* ¶ 11.) On January 29, 2016, in a telephone conversation, she presented Wagner with a fourth opportunity, franchisor ILKB, LLC. (*Id.*) Non-Party ILKB, LLC ("ILKB") is the franchisor of "iLoveKickboxing.com" franchises, which are fitness facilities dedicated to kickboxing, a form of physical fitness. (*Id.* ¶ 6.) At all relevant times, ILKB was a New York limited liability company with its headquarters in New York State. (*Id.*) ILKB offered and sold franchises only in and from New York State. (*Id.*)

Golliver explained to Wagner that she had not initially presented ILKB to him because another franchisee had already taken Wagner's preferred geographic area; however, she said, there was another area available that was only about a half hour from Wagner's house. (*Id.* ¶ 11.) Golliver represented that because ILKB was a franchise that could be operated by an absentee owner, that there would be no problem if the franchise was some distance from Wagner's home. (*Id.*)

Through its website (https://www.franchoice.com/), FCI held itself out as directing prospective franchisees to "high quality franchise businesses that match your

2

requirements" and represented that it would match "entrepreneurs like you with the perfect franchise business." (*Id.* ¶ 10.) FCI stressed that Plaintiff could "avoid the confusion of researching" franchise opportunities and could focus on those franchises that FCI had "selected . . . as franchise businesses matching [his] requirements." (*Id.*) FCI further represented that "[t]hey will be by your side coaching you and making sure you are getting the information you need in order to make the best decision for you." (*Id.*)

During a January 29, 2016 phone call, Golliver represented to Wagner that: the ILKB franchise business was suitable for absentee ownership, meaning that Wagner would only need to put in 5 to 10 hours a week of work; ILKB had a perfect record in that no studios had failed over the prior five years; ILKB franchises generated profits of $10,000 to $20,000 per month; the typical investment for the franchise was about $20,000, and that the high end to open a studio was $250,000; and ILKB would handle all of the marketing activities for the franchise. (*Id.* ¶ 12.) Had the representations of FCI and Golliver concerning the franchise's revenue and profitability been true, Wagner would have had annual profits totaling $240,000 per studio for a period of 5 years, or a total of $1.2 million for each location he purchased. (*Id.* ¶ 14.) Neither FCI nor Golliver ever mentioned any ILKB membership attrition issues or issues with bad debts in the form of delinquents, declines, or cancellations. (*Id.* ¶ 12(e).)

Golliver put Wagner in touch with ILKB, Wagner visited the ILKB franchise headquarters, and received a presentation on the ILKB franchise. (*Id.* ¶ 13.) After that, relying upon FCI's and Golliver's expertise in franchising, superior knowledge, and their

3

representations, and without knowing or having reason to believe that their statements and representations were false, Wagner signed a franchise agreement and multi-unit agreement with ILKB on April 6, 2016, and invested $110,000 in franchise fees for three territories, including a location in Franklin, Wisconsin. (*Id.*) The Amended Complaint does not specify where the other territories are located.

Contrary to FCI and Golliver's representations, Plaintiff's franchise has been marginally profitable and has accumulated operating losses in excess of $324,000, which are continuing. (*Id.* ¶ 15.)

After opening the business, Wagner learned that the representations that FCI and Golliver had made to Wagner relating to ILKB franchises were untrue, including: that the franchise was suitable for absentee ownership (instead requiring constant attention by the owner); representations relating to the marketing of the franchise; representations that there had been no closures of ILKB franchises; the expected profit of ILKB franchises; and the costs to franchisees. (*Id.* ¶ 16.) In addition, FCI never disclosed that attrition made it impossible to attain or maintain the levels of membership needed to "break even." (*Id.*) Defendants also failed to do or disclose their due diligence by not discovering or communicating to Plaintiff the existence of lawsuits and a bankruptcy related to ILKB's founder and its affiliates. (*Id.* ¶¶ 17-18.) Wagner asserts that had he been told this information by Defendants he would not have purchased any franchises from ILKB. (*Id.* ¶ 18.)

Plaintiff asserts claims for relief against Defendants for their alleged violations of the New York Franchise Sales Act, N.Y. Gen. Bus. L. 680 *et seq.*; the Wisconsin

Franchise Investment Law - Wis. Stat. 553.01; and the Minnesota Franchise Act, Minn. Stat. §80C.01 *et seq.* Plaintiff also asserts claims against Defendants for common law fraud and negligent misrepresentation.

Defendants move to dismiss Plaintiff's New York Franchise Sales Act ("NYFSA") and Wisconsin Franchise Investment Law ("WFI") claims.

## II.   LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, a court must afford the plaintiff all reasonable inferences from those allegations. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*,

5

550 U.S. 544, 555 (2007)).  Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 556).  "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted).  "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679 (citation omitted).

> Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:
>
> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests.  *Twombly*, 127 S. Ct. at 1965 n. 3.  A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint.  *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  While matters "outside the pleadings" may not be considered in deciding a Rule

6

12 motion to dismiss, documents "necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Thus, while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

### III.   ANALYSIS

Defendants argue that Plaintiff's NYFSA and WFI claims against them are time-barred by the statutes' respective three-year statutes of limitations. (Dkt. 16 at 4-8.) Defendants also argue that the Wisconsin claims fail in so far that Plaintiff has failed to allege that all of the franchises are located in Wisconsin. (*Id.* at 7.)

**A.   Whether Plaintiff's Claims are Time-Barred**

"A federal court sitting in diversity applies the statute-of-limitations rules of the forum." *Great Plains Trust Co. v. Union Pac. R.R. Co.*, 492 F.3d 986, 992 (8th Cir. 2007). Minnesota Statutes Section 541.31, subdivision (a)(1), applying to conflicts of law as it relates to statutes of limitations provides, "if a claim is substantively based upon the law of one other state, the limitation period of that state applies . . . ." Minn. Stat. § 541.31(a)(1). Given that the substantive law of New York and Wisconsin apply to the

7

claims at issue in the present Motion, the Court will apply the statutes of limitations as set forth in the NYFSA and WFI.

Under the NYFSA:

> An action shall not be maintained to enforce a liability created under this section unless brought before the expiration of **three years after the act or transaction constituting the violation**.

N.Y. Gen. Bus. Law § 691(4). For the purposes of determining when the statute of limitations begins to run on a NYFSA claim, "the 'act or transaction constituting the violation occurred when the franchises were purchased.'" *Kroshnyi v. U.S. Pack Courier Serv's, Inc.*, 771 F.3d 93, 103 (2d Cir. 2014); *see also Chan v. Big Geyser, Inc.*, No. 1:17-CV-06473 (ALC), 2018 WL 4168967, at *14 (S.D.N.Y. Aug. 30, 2018) (same). In reaching its holding, the Second Circuit in *Kroshnyi* surveyed the available case law on this issue:

> *United Magazine Co. v. Murdoch Magazines Distribution, Inc.*, 146 F. Supp. 2d 385, 407 (S.D.N.Y. 2001) ("United Magazine"), *aff'd*, 279 Fed. Appx. 14, 19 (2d Cir. 2008) (holding that "the limitations period begins to run at the time that the parties first enter into the franchise agreement"); *Leung v. Lotus Ride, Inc.*, 198 A.D.2d 155, 604 N.Y.S.2d 65, 67 (1st Dep't 1993) (FSA claims based on "franchise agreements that were executed more than three years prior to commencement of the action" properly dismissed as untimely); *see also Bayit Care Corp. v. Tender Loving Care Health Care Servs. of Nassau Suffolk, LLC,* 843 F. Supp. 2d 381, 385 (E.D.N.Y. 2012) ("In assessing the timeliness of claims made under the FSA, courts have generally determined that the three-year limitations period begins to run when the franchise contract is entered into, and that continuous violations do not toll the statute of limitations." (internal quotation marks omitted)).

*Kroshnyi*, 771 F.3d at 103. Moreover, under the NYFSA, "'continuous violations do not toll the statute of limitations.'" *Id.* (quoting *United Magazine*, 146 F. Supp. 2d at 407).

Similarly, WFI claims are subject to a three-year statute of limitations:

8

> No action may be maintained against any person to enforce any liability under this section unless it is brought before the expiration of 3 years after the act or transaction constituting the violation upon which the liability is based or 90 days after delivery to the franchisee of a written notice from or on behalf of that person that discloses any violation of this chapter and that is filed with the division, whichever first expires.

Wisc. Stat. § 553.51, subd. (4). The statute of limitations for a WFI claim begins to run "the day the parties execute[ ] the Agreement." *Wauwatosa Hotel Grp., LLC v. Days Inn Worldwide, Inc.*, No. 14-C-994, 2014 WL 12650624, at *5 (E.D. Wis. Dec. 12, 2014).

According to Defendants, the lawsuit is time-barred because the Amended Complaint alleges that Wagner signed the franchise agreement and multi-unit agreement with ILKB on April 6, 2016, Wagner did not serve the initial Complaint on FCI on April 9, 2019, and Wagner served the Complaint on Golliver on April 10, 2019. (Dkt. 16 at 5, 7.) Defendants' argument depends on their assertion that the commencement of an action is governed by Minnesota law, which provides that commencement occurs upon the service of process. (*Id.* (citing Minn. R. Civ. P. 3.01).) The argument also depends on the assertion that the agreements were executed as of the date of Wagner's signature. (*Id.* at 6.) Plaintiff, attaching the purported agreements (without any declaration) to their opposition papers, argues that the full execution date, i.e., when both parties had executed the agreements, did not occur until April 11, 2016, which would make both claims timely regardless of the commencement date of the suit. (Dkt. 22 at 7.) Plaintiff's second argument is that the commencement date of the present suit is governed by New York and Wisconsin law, which use the date of the filing of the Complaint as the date of commencement, in this case April 4, 2019, making the claim timely even if April 6, 2019 was the cut-off date for the claims. (*Id.* at 8-9.) In their Reply, Defendants assert that

9

Plaintiff's argument that ILKB signed the contract on November 11, 2016 is not alleged in the Amended Complaint and is contrary to the agreement's effective date of April 6, 2016. (Dkt. 23 at 5.)  According to Defendants, Plaintiff's reliance on the April 11, 2016 cover letter from ILKB enclosing the executed the franchise and multi-outlet agreement is problematic for Plaintiff because that cover letter is not referenced or properly incorporated into the Amended Complaint and because the date that ILKB sent the documents to Plaintiff does not give rise to the inference that ILKB signed the agreements on that date.  (*Id.* at 5-6.)

FCI and Golliver's statute of limitations defense constitute an affirmative defense to Plaintiff's claims.  *See Hansen v. U. S. Bank Nat'l Ass'n*, 934 N.W.2d 319, 326 (Minn. 2019); *Appellant v. Gardiner*, No. 15209/12, --- N.Y.S.3d ---- 2019 WL 5406591, at *2 (N.Y. App. Div. Oct. 23, 2019); *Robinson by Robinson v. Mount Sinai Med. Ctr.*, 137 Wis. 2d 1, 16, 402 N.W.2d 711, 717 (1987).  "As a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense."  *Joyce v. Teasdale*, 635 F.3d 364, 367 (8th Cir. 2011).  Here, the only facts alleged in the Amended Complaint regarding the execution date are that "Mr. Wagner signed a franchise agreement and multi-unit agreement with ILKB on April 6, 2016 . . . ."  (Dkt. 13 ¶ 13.)  There is no mention in the Amended Complaint when ILKB executed the agreements at issue.  Even assuming that the Franchise Agreement and Multi-Unit Agreement are necessarily embraced by the Amended Complaint and the Court could consider them for purposes of the Motion to Dismiss, the information as to the actual execution date is unclear in those agreements.

Supporting the contention that the agreements were executed by both parties on April 6, 2016, is Wagner's signature dated April 6, 2016 (Dkt. 22-2 at 39 of 49), that the Franchise Agreement represents that the agreement "is made and entered into as of April 6th, 2016 (the 'Effective Date')" (*id.* at 6 of 49), and that the signature page signed by both parties, albeit without any indication who signed the document on behalf of ILKB, provides that "the parties hereto have caused this agreement to be executed as of the Effective Date" (*id.* at 39 of 49).

That said, the ILKB signature is undated and the Franchise Agreement provides that "[t]his Agreement **will become effective only upon the execution by you and by us**, and only after you were provided with a FDD. HOWEVER, THIS AGREEMENT **IS NOT BINDING ON US UNLESS AND UNTIL IT HAS BEEN ACCEPTED AND SIGNED BY OUR PRESIDENT**." (*Id.* at 37 of 49 (emphases added).) This, along with the April 11, 2016 welcome letter attaching a copy of the executed Franchise & Multi-Outlet Agreement for Wagner's records renders the Court unable to determine, based on the Amended Complaint even in conjunction with the agreements, when the Franchise Agreement was actually fully executed by both parties. In other words, while the Court can accept as true that Wagner executed the Franchise & Multi-Outlet Agreement on April 6, 2016 based on his dated signature, it cannot, for purposes of this Motion to Dismiss, determine when the agreements were signed by ILKB. Without the

ILKB's execution date or other evidence relied upon by Defendants as to the purchase date, dismissal based on Defendants' statute-of-limitations argument is not appropriate.[1]

## B. Whether Plaintiff Has Adequately Alleged that All of the Franchises Purchased Are Located in Wisconsin

Defendants argue that the Court should also dismiss Plaintiff's Wisconsin claims for the additional reason that Wisconsin Law applies to the offer or sale of a franchise in Wisconsin, and only one of the three territories that form the basis of Plaintiff's claim is identified as being located in Wisconsin. (Dkt. 16 at 8 (citing Wisc. Stat. § 553.41, subd. (3)). The portion on the Amended Complaint that Defendants rely upon provides that Plaintiff "invested $110,000 in franchise fees for three territories, including a location in Franklin, Wisconsin." (Dkt. 13 ¶ 13.) Plaintiff counters that the Multi-Unit Agreement (Dkt. 22-3) makes it clear that the territories at issue are located in Wisconsin. (Dkt. 22 at 9.) Defendants do not contest this issue in their reply. (Dkt. 23.) The Court does not read the Amended Complaint as asserting that two of the franchises are located outside of Wisconsin merely by providing a specific location of one the franchises as an example, and Court will not impose a particularity requirement as to the location of each of the franchises. *See* Fed. R. Civ. P. 8(a); Fed. R. Civ. P. 9.

---

[1] Nothing in the Report and Recommendation should be interpreted as precluding Defendants from bringing a Motion for Summary Judgment once they obtain competent evidence relating to the date the agreements were entered into by the parties.

## IV.   RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) (Dkt. 14) be **DENIED**.


DATED: December 19, 2019         *s/ Elizabeth Cowan Wright*
                                 ELIZABETH COWAN WRIGHT
                                 United States Magistrate Judge


## NOTICE

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).